IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| STACY WAITS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:22-cv-147 (MTT) |
| | ) |
| TALIA SPENCER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

_____

## ORDER

Plaintiff Stacy Waits claims Defendant Talia Spencer, an officer with the Jackson City Police Department, arrested her without probable cause. Doc. 11. Defendants Spencer and the City of Jackson move to dismiss Waits' complaint. Docs. 7; 12. For the reasons that follow, the defendants' motions (Docs. 7; 12) are **GRANTED**.

### I. BACKGROUND[1]

Waits is the owner and operator of Waits Service Station in Jackson, Georgia. Doc. 11 ¶ 9. The gas station is "just off of Highway 42 and approximately one hundred yards from the City of Jackson Corporate Limits." *Id*. On October 21, 2020, Officer

---

[1] These facts are drawn from Waits' amended complaint and the body camera footage of the incident. Docs. 7-3; 7-4; 11. The parties do not dispute that body camera footage can be considered on a motion to dismiss. Docs. 11 ¶ 19; 12-1 at 8; 15 at 2-5; *McDowell v. Gonzalez*, 820 F. App'x 989, 992 (11th Cir. 2020) ("In reviewing [plaintiff's] complaint to determine whether it should be dismissed under Rule 12(b)(6), the district court properly considered both the amended complaint and body camera footage that was attached to the motion to dismiss because the body camera footage was central to the amended complaint and was undisputed."); *see also Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir. 2020); *Swinford v. Santos*, 2022 WL 987992, at *3 (M.D. Ga. Mar. 31, 2022); *Robinson v. City of Huntsville*, 2021 WL 4820652, at *2 n.2 (N.D. Ala. Oct. 15, 2021), *aff'd*, 2022 WL 3867584 (11th Cir. Aug. 30, 2022).

Thomas Lucas, who is also with the Jackson City Police Department, initiated a traffic stop near the city corporate limits for an alleged seatbelt violation by two individuals in a black Ford F-150.  Docs. 7-3 at 00:00-0:33; 11 ¶ 10.  Officer Lucas pulled into Waits Service Station to conduct the traffic stop.  Docs. 7-3 at 00:00-00:33; 11 ¶ 10.  Officer Lucas approached the truck and asked the two occupants for identification.  Doc. 7-3 at 00:33-00:45.  The driver, Thomas Jeffery Bradshaw, and the passenger, Robert Brian Phillips, complied.  Docs. 7-2 at 4; 7-3 at 00:33-00:45.  Officer Lucas recognized Phillips as an individual with outstanding warrants and escorted Phillips to the front of his patrol vehicle, behind Bradshaw's truck.  Doc. 7-3 at 00:45-01:33.  While Officer Lucas questioned Phillips and searched him for weapons, Bradshaw remained in the driver seat of the truck.  *Id*. at 01:33-06:54.

      Approximately six minutes into the traffic stop, Officer Spencer arrived and parked her patrol vehicle beside Officer Lucas' vehicle.  Docs. 7-3 at 06:05; 7-4 at 00:03.  Officer Lucas' and Officer Spencer's vehicles partially blocked the entrance to the service station.  Doc. 7-4 at 00:31-00:39.  Waits exited the station with the "intent to request that [Officer] Spencer move her patrol car" to make room for "customers to pass through the drive."  Doc. 11 ¶ 12.  Waits walked to the parked truck and began talking with Bradshaw, who she recognized was a regular customer of the service station.  Docs. 7-4 at 00:51; 11 ¶¶ 12-13.  The conversation between Waits and Bradshaw is not audible from the body camera footage.  Doc. 7-4 at 00:47-00:51.  While Waits contends she "did not instruct [Bradshaw] to move his vehicle or take any action whatsoever," she concedes that she told Bradshaw "that the drive would need to be cleared."  Doc. 11 ¶

13. At the time, Officer Lucas was behind Bradshaw's truck with Phillips, searching him for weapons. Doc. 7-3 at 06:06-07:00.

Officer Spencer saw Waits talking to Bradshaw and began walking towards them saying, "I don't know who the hell she think [sic] she's talking to." Docs. 7-4 at 00:47-00:51; 11 ¶ 13. Officer Spencer informed Waits that she would not be able to move the vehicles, explaining "it's an officer safety issue" and that when the traffic stop was complete, she would be "more than happy to move the vehicle." Docs. 7-4 at 00:51-00:59; 11 ¶ 14. Waits replied, "well he can pull up then for the time being" and "this is not the city, this is the county," insisting that Officer Spencer and Bradshaw move their vehicles. Docs. 7-4 at 00:59-01:06; 11 ¶ 14. In response, Officer Spencer arrested Waits for obstruction. Docs. 7-4 at 01:06-02:10; 11 ¶ 15.

Officer Spencer contacted her supervisor, Chief Crumley, to determine if she had jurisdictional authority to make the arrest. Docs. 7-4 at 15:50-17:50; 11 ¶ 16. Chief Crumley informed Officer Spencer that she did not because the service station is located in Butts County, outside Jackson city limits. Docs. 7-4 at 15:50-17:50; 11 ¶ 17. As a result, Officer Spencer released Waits. Docs. 7-4 at 18:23-20:05; 11 ¶ 16. Waits was in custody for approximately twenty minutes. Docs. 7-4 at 01:10-20:05; 11 ¶ 17.

Waits' initial complaint alleged claims under 42 U.S.C. § 1983 against Officer Spencer for false arrest and malicious prosecution; a § 1983 claim against the City for "inadequate hiring, retention, training and supervision"; and a state law false imprisonment claim against Officer Spencer. Doc. 1. The defendants moved to dismiss for failure to state a claim. Doc. 7. Waits amended her complaint and withdrew her § 1983 malicious prosecution claim. Doc 11. The defendants moved to dismiss again,

arguing that Waits' remaining claims fail because (1) Officer Spencer had probable cause to arrest Waits, (2) Officer Spencer is entitled to qualified immunity, and (3) the complaint fails to allege a *Monell* claim against the City.  Doc. 12-1.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (cleaned up).  The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  Where there are

dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

## III. DISCUSSION

### A. Section 1983 Claim Against Officer Spencer

Waits' § 1983 claim for false arrest against Officer Spencer fails because Officer Spencer is entitled to qualified immunity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). To meet this burden, a plaintiff typically must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation." *Lewis*, 561 F.3d at 1291.

In false arrest cases, however, the plaintiff must demonstrate the officer did not have probable cause at the time of the arrest to establish a constitutional violation. *Myers v. Bowman*, 713 F.3d 1319, 1326 (11th Cir. 2013). And to clearly establish the law, a plaintiff must show that the officer lacked "arguable probable cause" to arrest the plaintiff. *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004); *see also Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009) ("In wrongful arrest cases, we have frequently framed the 'clearly established' prong as an 'arguable probable

-5-

cause' inquiry.  In other words, we have said that when an officer violates the Constitution because he lacked probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity *if* he had 'arguable probable cause' to make the arrest.").

Arguable probable cause requires only that "under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present."  *Crosby*, 394 F.3d at 1332.  "This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists."  *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).  What is relevant for qualified immunity purposes is "the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later."  *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999).  Whether an arresting officer possesses arguable probable cause "depends on the elements of the alleged crime ... and the operative fact pattern."  *Skop*, 485 F.3d at 1137-38 (internal citation omitted).

Georgia law provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer … in the lawful discharge of his or her official duties shall be guilty of a misdemeanor."  O.C.G.A. § 16-10-24(a).  "[V]iolence or forcible resistance is not required to prove that an officer was hindered or obstructed in a misdemeanor obstruction case.  Argument, flight, stubborn obstinance, and lying are all examples of conduct that may satisfy the obstruction element."  *Pinchon v. State*, 237 Ga. App. 675, 675, 516 S.E.2d 537, 538 (1999); *see also Stryker v. State*, 297 Ga. App.

493, 494, 677 S.E.2d 680, 682 (2009) (clarifying that because force is no longer an element of misdemeanor obstruction, "words alone" can constitute obstruction); *Johnson v. State*, 234 Ga. App. 218, 219, 507 S.E.2d 13, 14-15 (1998) (holding that the defendant's decision to argue with officers about their statutory authority to demand his license and proof of insurance during a traffic stop constituted obstruction).

Waits does not dispute that Officer Spencer was acting within her discretionary authority, so the burden shifts to her to show Officer Spencer violated her clearly established rights. Doc. 15 at 5-9; *Edwards*, 666 F.3d at 1294. Because Officer Spencer had arguable probable cause to arrest Waits for obstruction, she did not violate clearly established law and is entitled to qualified immunity. *Scarbrough v. Myles*, 245 F.3d 1299, 1303 (11th Cir. 2001). While Officer Lucas, who was behind Bradshaw's truck, was occupied with the arrest of Phillips, Bradshaw remained in the driver seat—a situation which posed a potential threat to the safety of the officers. Doc. 7-3 at 01:33-06:54. When Waits interacted with Bradshaw, Officer Spencer was concerned that Waits was instructing Bradshaw to move his vehicle, which is evidenced by her statements that the vehicles could not be moved because it presented "an officer safety issue" and that when the traffic stop was complete, she would be "more than happy to move the vehicle." Docs. 7-4 at 00:47-00:59; 11 ¶¶ 13-14. Waits responded by insisting Bradshaw could "pull up" his truck—despite Officer Spencer's explicit direction that the vehicles could not be moved—and that Officer Spencer did not have authority to act because "this is the county." Docs. 7-4 at 00:59-01:06; 11 ¶ 14. In sum, Waits injected herself into the ongoing traffic stop and the arrest of Phillips and rebuffed and challenged Officer Spencer's instructions. These actions provided Officer Spencer with

arguable probable cause to arrest her for obstruction.  *Pinchon*, 237 Ga. App. at 675, 516 S.E.2d at 538; *Johnson*, 234 Ga. App. at 219, 507 S.E.2d at 14-15.

*Reese v. Herbert* does not, as Waits argues, require a contrary conclusion.  Doc. 15 at 7-8; 527 F.3d 1253 (11th Cir. 2008).  In *Reese*, the plaintiff arrived on the scene of a domestic violence call at the apartment complex he owned and maintained.  527 F.3d at 1258.  "Ten minutes had elapsed since the alleged aggressor in the domestic violence dispute had been handcuffed and placed in Deputy Geddie's patrol car."  *Id*. at 1272.  The plaintiff then approached Deputy Herbert to ask if the officers' vehicles could be moved.  *Id*.  The plaintiff "patiently waited for a few minutes before making his request" and "maintained a calm voice and demeanor" throughout the exchange.  *Id*.  Deputy Herbert "replied that it was necessary for the vehicles to remain" and instructed the plaintiff to leave the scene.  *Id*. at 1258.  The plaintiff turned to talk to another officer when Deputy Herbert grabbed the plaintiff and tackled him to the ground.  *Id*.  The plaintiff was arrested and charged with misdemeanor obstruction.  *Id* at 1261.  On these facts, the court concluded that Deputy Herbert lacked arguable probable cause to arrest the plaintiff for obstruction.  *Id*. at 1273.

*Reese*, if anything, confirms that Officer Spencer had arguable probable cause to arrest Waits.  The plaintiff in *Reese* approached the officers after the situation was under control; Waits interacted with a person involved in an ongoing traffic stop and arrest.  Doc. 7-3 at 01:33-06:54; 527 F.3d at 1272.  The alleged aggressor in *Reese* was handcuffed and secure in the officer's patrol vehicle before the plaintiff asked if the officers could move their vehicles.  527 F.3d at 1272.  Waits, on the other hand, walked over to Bradshaw, an individual involved in the stop who could have posed a threat to

-8-

the officers, to inform him that "the drive would need to be cleared."  Doc. 11 ¶ 13.  When she did that, Officer Lucas was behind Bradshaw's truck and in the process of arresting Phillips.  Doc. 7-3 at 06:06-07:00.  By approaching Bradshaw, notifying him his truck would need to be moved, and demanding that "he can pull up" his truck, Waits interfered in the discharge of Officer Spencer's and Lucas' official duties.  Docs. 7-4 at 00:47-01:06; 11 ¶¶ 13-14.  Furthermore, Waits did not maintain "a calm voice and demeanor" during her exchange with Officer Spencer.  *Reese*, 527 F.3d at 1272.  Waits was argumentative, impatient, and raised her voice.  Doc. 7-4 at 00:47-01:06.  *Reese* does not help Waits.[2]

Because Officer Spencer had arguable probable cause to arrest Waits, she is entitled to qualified immunity.  *Crosby*, 394 F.3d at 1332.

## B. Section 1983 Claim Against the City

Waits' claim against the City fails because Waits has not alleged an unconstitutional policy or custom or any other basis for municipal liability.  The Supreme

---

[2] Waits also cites *WBY v. DeKalb County Georgia* and *Harris v. State*.  Doc. 15 at 7-8; 695 F. App'x 486 (11th Cir. 2017); 314 Ga. App. 816, 726 S.E.2d 455 (2012).  In *WBY*, the court concluded that the plaintiff's "failure to respond immediately to [the defendant's] orders" did not constitute arguable probable cause to arrest the plaintiff for obstruction.  695 F. App'x at 495.  Similarly, in *Harris*, the court reversed Harris' conviction for misdemeanor obstruction which was premised on Harris "refusing to cooperate" with officers during a child welfare check.  314 Ga. App. at 819, 821-22, 726 S.E.2d at 457, 459.  But Waits' arrest is not predicated solely on her failure to comply with an order or refusal to cooperate.  Rather, Waits' decision to inject herself in an ongoing traffic stop and provide contradictory information to an individual involved in that stop provided additional justification for Officer Spencer to arrest Waits for obstruction.

Finally, Waits cites a handful of Georgia Court of Appeals decisions for the proposition that "misdemeanor obstruction convictions involve words plus something more."  Doc. 15 at 8 (citing *Steillman v. State*, 295 Ga. App. 778, 673 S.E.2d 286 (2009); *Pinchon v. State*, 237 Ga. App. 675, 516 S.E.2d 537 (1999); *Leckie v. State*, 231 Ga. App. 760, 500 S.E.2d 627 (1998)).  But the Georgia Court of Appeals has repeatedly held that words alone *can* constitute obstruction when those words involve more than "speaking to, remonstrating with, or even criticizing an officer."  *Harris*, 314 Ga. App. at 820, 726 S.E.2d at 458; *see also Stryker*, 297 Ga. App. at 494, 677 S.E.2d at 682.  Waits' conversation with Bradshaw, informing him that "the drive would need to be cleared" and demanding that "he can pull up" his truck, constituted interference with an ongoing stop, more than mere remonstration or criticism of an officer.  Docs. 7-4 at 00:47-01:06; 11 ¶¶ 13-14.

Court has placed strict limitations on municipal liability under § 1983. *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "A county's liability under § 1983 may not be based on the doctrine of respondeat superior." *Id*. Instead, only when the county's policy or custom causes a constitutional violation may a county be held responsible. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Specifically, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Waits alleges that given Officer Spencer's "history of angry and confrontational conduct and her termination from the Henry County Police Department, [the City] knew or should have known" that Officer Spencer "was unfit to be a police officer" and "would likely commit the constitutional violation at issue." Doc. 11 ¶ 28. But Waits does not allege any other incident or report of wrongful arrest by Officer Spencer or any other Jackson City Police Department employee. And "[a] single incident of a constitutional violation is insufficient to prove a policy or custom" necessary to state a claim for municipal liability. *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 957 (11th Cir. 2019) (quoting *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1312 (11th Cir. 2011)). Therefore, Waits' § 1983 claim against the City fails.[3]

---

[3] In any event, Waits abandoned this claim when she failed to address the defendants' *Monell* arguments in her response to the motion to dismiss. Docs. 15; 18 at 1, 9; *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (citing *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)).

**C. State Law Claim Against Officer Spencer**

Finally, Waits brings a state law claim for false imprisonment under O.C.G.A. § 51-7-20.  Doc. 11 ¶¶ 31-33.  The Court will not address this claim.  Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction as to those claims over which it has supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction.  In exercising its discretion, the court should consider comity, judicial economy, convenience, and fairness to the parties.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994) (finding that the test as outlined in *Gibbs* should be used in accordance with § 1367).  The Eleventh Circuit has recognized "that when all federal claims are eliminated before trial, the *Gibbs* factors will ordinarily point toward dismissing the state claims as well."  *Edwards v. Okaloosa Cnty.*, 5 F.3d 1431, 1433 (11th Cir. 1993) (citing *Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Because the Court is dismissing the § 1983 claims against Officer Spencer and the City—the claims over which it has original jurisdiction—the Court declines to exercise supplemental jurisdiction over Waits' state law claim for false imprisonment.  *See Gibbs*, 383 U.S. at 726.  Accordingly, this claim is **DISMISSED without prejudice**.

## IV. CONCLUSION

In sum, Officer Spencer is entitled to qualified immunity and Waits has failed to allege municipal liability under *Monell*.  Thus, the defendants' motions to dismiss (Docs. 7; 12) are **GRANTED**.  Accordingly, Waits' § 1983 claim against Officer Spencer is **DISMISSED with prejudice** and her § 1983 claim against the City is **DISMISSED without prejudice**.  The Court declines to exercise supplemental jurisdiction over her

state law claim and that claim is **DISMISSED without prejudice**. Finally, the defendants' motions to stay discovery (Docs. 10; 13) are **DENIED as moot**.

**SO ORDERED**, this 20th day of January, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
